UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X
KATRINA CLOTHIER,

                              Plaintiff,

   -against-

WOMEN'S CARE IN OBSTETRICS AND GYNECOLOGY, P.C.,
JENNIFER BASHANT, M.D., SUSAN BRADFORD, M.D.,
KATHRYN LEOPOLD, M.D., DIANA SUSTAR, M.D.
and GAIL GAZZILLO, in their personal and professional capacities,

                              Defendants.
---------------------------------------------------------------------------------X

1:22-cv-01287 (DNH/CFH)

Case No. _____

**COMPLAINT**

Jury Trial Demanded

      The Plaintiff KATRINA CLOTHIER by and through her attorneys, BERLINGIERI LAW, PLLC, as and for her Complaint in this action against the Defendants WOMEN'S CARE IN OBSTETRICS AND GYNECOLOGY, P.C., JENNIFER BASHANT, M.D., SUSAN BRADFORD, M.D., KATHRYN LEOPOLD, M.D., DIANA SUSTAR, M.D., and GAIL GAZZILLO, in their personal and professional capacities, respectfully alleges upon information and belief as follows:

## NATURE OF CASE

1.     This is a civil action for damages and equitable relief based upon willful violations that Defendant committed of Plaintiff's rights guaranteed to her by federal and state law, and complains for causes of action of: (i) discrimination based on religion under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.§ 2000e *et seq.*, as amended ("Title VII"); (ii) retaliation under the Title VII; (iii) discrimination based on religion under, Article 15 of the Executive law the New York State Human Rights Law ("NYSHRL") § 296, et seq.; (iv) retaliation under NYSHRL; (v) aiding and abetting discrimination under NYSHRL; (vi) Negligent Supervision; Hiring and Training, (vii) the requirement that employers furnish

1

employees with wage notices at the time of hire or annually containing specific categories of information under New York Labor Law ("NYLL") NYLL § 195(1); (viii) Negligence *Respondeat Superior*, (ix) Negligent Infliction of Emotional Distress; and as to Defendants Bashant, Sustar, Bradford and Gazzillo only (x) Intentional Infliction of Emotional Distress; and (xi) any other claims(s) that can be inferred from the facts set forth herein. Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

2. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction as this case involves a Federal under Title VII of the 1964 CivilRights Act, 42 U.S.C.§ 2000e *et seq* as amended, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4. This Courthas supplemental jurisdiction over Plaintiff's related claims arising under New York law and any and all state and local law pursuant to 28 U.S.C. §1367 (a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b). The acts and transactions complained of herein occurred in this District, Plaintiff resides and resided in this District during the course of her employment, and Defendant was and is located in this District.

6. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about November 1, 2021, against Defendant Women's Care in Obstetrics & Gynecology, (EEOC No. 525-2022-00211).

7. On September 7, 2022, the EEOC, issued Plaintiff a Notice of Right to Sue annexed hereto as **Exhibit A**.

## **THE PARTIES**

8. Plaintiff Katrina Clothier was and is a resident of the State of New York at all relevant times herein resided in this District.

9. Defendant Women's Care in OB/GYN (WCOG) ("WCOG) is a medical professional corporation formed under the laws of the State of New York located at 45 Hudson Avenue, Glen Falls, New York 12801 and 6 Carpenter Lane, Saratoga Springs, New York, 12866, that provides women's healthcare services within the District.

10. Upon information and belief, at all times relevant to this Complaint, Defendant WCOG maintained more than (15) employees.

11. Upon information and belief, Defendant Jennifer Bashant, M.D. (" Dr. Bashant") was and is medical doctor and a part-owner of WCOG and is a resident of the State of New York, residing at 14 Stonehurst Dr, Queensbury, NY 12804 at all relevant times herein resided in this District.

12. Upon information and belief, Defendant Susan Bradford, M.D., ("Dr. Bradford") was and is medical doctor and a part-owner of WCOG and is a resident of the State of New York residing at 294 Lake Ave, Saratoga Springs, NY 12866 at all relevant times herein resided in this District.

13. Upon information and belief, Defendant Kathryn Leopold, M.D., ("Dr. Leopold") was and is medical doctor and a part-owner of WCOG and is a resident of the State of New York residing at 43 Homestead Rd, Saratoga Springs, NY 12866 at all relevant times herein resided in this District.

14. Upon information and belief, Defendant Diana Sustar, M.D., ("Dr. Sustar was and is medical doctor and a part-owner of WCOG and is a resident of the State of New York at all relevant

        times herein resided in this District.

15. Upon information and belief, Defendant Gail Gazzillo, (" Ms. Gazzillo") was and is WCOG's Practice Manager and is a resident of the State of New York residing at 422 Devils Ln, Ballston Spa, NY, 12020 at all relevant times herein resided in this District.

16. All defendants named above are collectively herein referenced as ("Defendants").

## BACKGROUND FACTS

17. Defendant WCOG operates an obstetrical and gynecologic health care practice with medical offices in Glen Falls and Saratoga Springs, New York.

18. The WCOG practice is owned by Drs. Jennifer Bashant, M.D., Susan Bradford, M.D., Kathryn Leopold, M.D. and Diana Sustar, M.D.

19. Drs. Jennifer Bashant, M.D., Susan Bradford, M.D., Kathryn Leopold, M.D., Diana Sustar, M.D., set all policies at WCOG including vaccination policies.

20. WCOG's medical practice is managed by Gail Gazzillo the Practice Manager.

21. Ms. Gazzillo was responsible for implementing the WCOG vaccination policies.

22. According to Defendant, WCOG has been providing obstetrical and gynecologic health care to women for over 60 years. WCOG provides a full range of gynecological and obstetrical services, with over 500 deliveries each year.

23. Defendant WCOG was and is an employer within the meaning of the Title VII, NYSHRL and NYLL.

24. Defendant employed Plaintiff as a part time medical receptionist from on or about November 9, 2020 until on or about September 30, 2021.

25. Plaintiff's religion is Christian.

26. Plaintiff disclosed to Defendants that she was a person of faith.

27. Plaintiff maintains sincerely held religious beliefs that do not allow her to be vaccinated.

28. Plaintiff is unvaccinated from the COVID-19 virus and refuses to take the vaccine due to her sincerely held religious beliefs but would use a mask and submit to weekly testing as a feasible alternative, if required by the Defendants.

29. In or around August 2021, Defendants announced that it would be mandating the COVID-19 vaccine for all of its employees and that non-vaccinated employees would be terminated by October 1, 2021.

30. As a private medical practice WCOG was not under any state or federal COVID-19 vaccination mandate and WCOG's vaccination mandate was self-imposed.

31. In or around August 2021, at the time that the Defendants announced the COVID-19 vaccination policy to the employees, upon information and belief there were only six (6) unvaccinated employees.

32. Upon information and belief, Plaintiff was the only employee who refuse get vaccinated, all other previously unvaccinated WCOG employees got vaccinated after WCOG implemented its COVID-19 vaccination policy in order to keep their employment.

33. On September 20, 2021, Plaintiff submitted a religious accommodation request form to Defendant, requesting an accommodation based on her sincerely held religious beliefs for an exemption to the COVID-19 vaccine.

34. Plaintiff informed Defendant that she would wear a mask and submit weekly COVID-19 tests if the exemption was granted.

35. In or around August 12, 2021, Plaintiff informed Ms. Gazzillo with respect to possibly

seeking a medical exemption to the COVID-19 vaccination policy, however Plaintiff informed Ms. Gazillo needed to communicate with her physician in order to determine if she was eligible for the vaccine because she was trying to convenience.

36. In or around late August 2022, Plaintiff communicated to Ms. Gazzillo that her physician informed Plaintiff that she was not eligible for a medical exemption.

37. During this time period, Drs. Bashant and Sustar had conversations with Plaintiff about her concerns with the vaccines.

38. As done with WCOG's patients, Drs. Bashant and Sustar attempted to dispel any misinformation and informed Plaintiff about the risk of COVID during pregnancy and the safety of the vaccines.

39. Drs. Bashant and Sustar caused Plaintiff extreme emotional distress when they attempted to dissuade her from seeking an exemption to the vaccine.

40. Drs. Bashant and Sustar promoted mainstream media political pro-vaccination talking points and medical fearmongering to Plaintiff in attempt to persuade Plaintiff to get the vaccine.

41. Drs. Bashant and Sustar attempted to dispel any vaccine hesitancy in Plaintiff with deceptive tactics, without consideration to Plaintiff's deeply held religious beleifs that would not permit her to take the vaccine and her intent to seek a religious exemption.

42. Drs. Bashant and Sustar failed to take into consideration that vaccinated individuals and unvaccinated individuals can contract and spread the COVID-19 virus at similar rates.

43. Drs. Bashant and Sustar failed to maintain any standard of care with respect to their attempts to medically coerce Plaintiff (their only employee who refused vaccination) to take the vaccine.

44. Drs. Bashant and Sustar falsely informed Plaintiff that there are no serious health risks associated with the vaccine despite known blood clotting risks and cardiovascular risks.

45. Drs. Bashant and Sustar ensured Plaintiff that the COVID-19 posed no fertility risk and recommended that she take the vaccine as employers, despite not being a WCOG patient.

46. Plaintiff informed Drs. Bashant and Sustar that she was not sure if she was ready to be vaccinated because her and her husband were trying to conceive a child and that she believed in God and wasn't sure that her religious beliefs allowed her to be vaccinated.

47. Drs. Bashant and Sustar disregarded Plaintiff's religious beliefs and the fact that Plaintiff was trying to conceive.

48. Drs. Bashant and Sustar told Plaintiff that the COVID-19 vaccines were safe and effective and were something that they recommended for their patients who were trying to conceive.

49. Plaintiff is not Drs. Bashant or Sustar or a WCOG patient.

50. In or around September 15, 2022, Plaintiff submitted her religious exemption to Defendants.

51. Plaintiff explained to Defendants in her religious accommodation request in part that aborted fetal cells used in the development or testing of the COVID-19 vaccine interfered with her Christian religious beliefs as well as her health and wellbeing.

52. Plaintiff submitted her signed declaration in support of her September 15, 2022, religious exemption to Defendants, citing that she was seeking an exemption to the COVID-19 vaccine based on her rights under "Title VII and the First Amendment

7

of the United States" and quoting specific scripture verses relating to Plaintiff's religious belief, such as "Psalm 127:3 says that 'Children are a heritage from the LORD, offspring a reward from him.' The fact that aborted stem cells were involved in the origination of the three COVID-19 shots make the consumption of this vaccine an unthinkable act to me. Therefore, I choose to exercise my right to a religious exemption from the Covid-19 shots."

53. Plaintiff spoke with Dr. Bradford, who falsely assured Plaintiff that she would have her job and not to worry because if she got the vaccine all would be OK.

54. Plaintiff informed Dr. Bradford that she was trying to conceive.

55. Plaintiff revealed that she had religious opposition to the use of fetal cells lines in the development and manufacture of the COVID-19 vaccine.

56. Plaintiff also suffered an anxiety attack while speaking with Dr. Bradford regarding the religious exemption because of how the meeting was approached and the issues discussed.

57. Dr. Bradford's conduct in the meeting was extreme and outrageous as Plaintiff clearly indicated that she felt uncomfortable discussing her health and faith with Dr. Bradford who is not Plaintiff's doctor and who is not Plaintiff's clergy member.

58. Defendant WCOG has failed to establish that granting Plaintiff a religious accommodation was an undue hardship for it.

59. Defendants falsely accused Plaintiff of being insincere in her request for religious accommodation.

60. Defendants reviewed Plaintiff's social media, including her Facebook in order to harass and dissuade Plaintiff from seeking an exemption to the vaccine based on religion.

61. Defendants cyber-bullied Plaintiff by showing Plaintiff her own Facebook page profile picture with a border around the picture that stated, "I Stand For Medical Freedom" "#StopTheMandate".

62. Dr. Bradford and Ms. Gazzillo falsely accused Plaintiff opposition to the vaccine mandate on political grounds.

63. Dr. Bradford and Ms. Gazzillo falsely accused Plaintiff of opposition to the vaccine mandate based solely own personal belief.

64. Dr. Bradford and Ms. Gazzillo harassed Plaintiff on the basis of her religion.

65. Dr. Bradford and Ms. Gazzillo scrutinized Plaintiff's religious exemption with undue scrutiny because of her religion.

66. Dr. Bradford and Ms. Gazzillo doubted whether Plaintiff was indeed a Christian with sincerely held religious belief seeking exemption to the COVID-19 vaccination mandate.

67. Plaintiff has maintained that her Christian beliefs are sincere and truly held.

68. Defendant WCOG refused to accept Plaintiff's beliefs as sincerely held religious beliefs arbitrarily determined with no empirical or scientific data to support that granting Plaintiff a religious accommodation would create an undue burden to its operations, including but not limited to the risk of the spread of COVID-19 to its employees and patients. WCOG sought total compliance to its vaccine mandate.

69. On or about September 23, 2021, Defendants sent Plaintiff a letter informing her of the denial of her religious exemption.

70. On or about September 23, 2021, Defendants informed Plaintiff that "WCOG has determined that there is a substantial risk of harm to our patients and staff if they are

exposed to unvaccinated employees, and there is no reasonable accommodation for your job duties that would prevent this risk. Therefore, WCOG is denying your request for a religious exemption."

71. Defendants further required Plaintiff to submit proof of vaccination by September 30, 2021 or face termination for failure to comply with the COVID-19 vaccination policy.

72. Defendant failed to engage in an interactive process with Plaintiff prior to denying Plaintiff's religious exemption requests for accommodation.

73. Plaintiff engaged in protected activity when she complained to Defendants directly after the denial of her religious accommodation request.

74. Defendants failed to reconsider Plaintiff's request.

75. Defendants had no equitable due process to determine Plaintiff's request for religious exemption.

76. Defendants acted arbitrarily and capriciously when they chose to deny Plaintiff's religious accommodation request, when based off the information they had could have easily granted it if they chose to do so.

77. Defendants' COVID-19 vaccination mandate did not achieve its desired effect of protecting WCOG's patients and employees because the vaccines do not stop the transmission or spread of the COVID-19 virus.

78. Current guidance from the U.S. Centers for Disease Control ("CDC") treats vaccinated and unvaccinated the same, there are no mandated quarantine periods, unvaccinated and vaccinated individuals according to the CDC should wear masks indoors if COVID-19 infections are prevalent in the local area, among many other guidelines that show that while perhaps well-meaning, the WCOG mandate did not

serve its stated purpose, rather resulted in Plaintiff's unable to continue employment at WCOG, due to Defendants' hyperbolic and wholly unfounded fear of having a single unvaccinated employee.

79. Defendants were hostile to Plaintiff on the basis of her religious beliefs.

80. Defendant terminated Plaintiff on September 30, 2021 for non-compliance with its COVID19 vaccination policy.

81. At the time of Plaintiffs hire, pay raise or annual basis, Defendants failed to furnish Plaintiff a wage notice in accordance with NYLL §195(1).

**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hireor to discharge any individual, or otherwise to discriminate against any individual with respect toher compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

84. Defendant the employer Defendants engaged in unlawful employment practices prohibitedby 42 U.S.C. §2000e et seq., by allowing discrimination based on religion and causing a hostile work environment.

85. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

86. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

87. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of her employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

88. The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of the employer Defendants.

89. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AND FOR THE THIRD CAUSE OF ACTION DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW (AGAINST ALL DEFENDANTS)

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

12

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

92. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff based on religion, requests for religious accommodation and prior complaints.

93. Plaintiff hereby makes a claim against all Defendants under all of the applicable paragraphs of Executive Law Section 296.

94. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW
### (AGAINST ALL DEFENDANTS)

95. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above withthe same force and effect as if more fully set forth herein.

96. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

97. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## NEW YORK STATE HUMAN RIGHTS LAW
## (AGAINST ALL DEFENDANTS)

98. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

100. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS AND FOR THE SIXTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION, RETENTION AND TRAINING
## (AGAINST ALL DEFENDANTS)

101. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102. Defendant WCOG is responsible for the training and supervision of all employees, agents, contractors and subcontractors who manage the premises including but not limited to the employee health and safety and have a duty to not engage in tortious acts from occurring on the premises.

103. The actions of individually named Defendants are the responsibility of and are imputed to and binding upon Defendant WCOG.

104. Defendant WCOG had a duty to prevent employees/servants/agents, including individual Defendants Drs. from acting or engaging in unlawful and/or tortious conduct.

105. The Defendant WCOG negligence in hiring, supervising, training and retaining employees/servants/agents that engaged in tortious and/or otherwise unlawful conduct was the direct and proximate cause of Plaintiff's severe injuries.

106. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

107. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### FOR FAILURE TO FURNISH WAGE NOTICES UNDER
### NEW YORK LABOR LAW § 195(1)
### (AGAINST ALL DEFENDANTS)

108. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109. As described above, Defendants willfully failed to furnish Plaintiff with a wage notice at the time of hire, on an annual basis or when Plaintiff received a pay raise containing the criteria required under N.Y. Lab. Law § 195(1).

110. Pursuant to Section 195(1) of the NYLL, an employer is required to provide its employees, at the time of hiring or change in pay, in writing in English and in the language identified by each employee as the primary language of such employee, a notice containing information such as, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular pay day designated by the employer . . .; the name

of the employer [;]. . . . [f]or all employees who are not exempt from overtime compensation . . ., the notice must state the regular hourly rate and overtime rate of pay."

111. Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff for statutory damages, liquidated damages, attorneys' fees, and costs.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**NEGLIGENCE RESPONDEAT SUPERIOR**
**(AGAINST ALL DEFENDANTS)**

112. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113. Defendants commenced a pattern of reckless, negligent, discriminatory, harassing and retaliatory proceedings against the Plaintiff culminating in the termination of Plaintiff after she complained at the workplace.

114. As a direct and proximate result of Defendants' tortious conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

115. As described above, the individual Defendants willfully intended to cause Plaintiff emotional distress.

**AS AND FOR THE NINTH CAUSE OF ACTION**
**FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

116. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

117. As described above, Defendants knew or should have known that they intended to cause Plaintiff emotional distress.

118. Defendants' conduct was extreme and outrageous.

119. Plaintiff was in the zone of danger from Defendants' actions, and it could be foreseeable that their actions could or would cause emotional distress upon the Plaintiff.

120. Defendants in perpetrating the above-described conduct, inflicted emotional distress as a result of terminating Plaintiff accusing his of malfeasance and assaulting Plaintiff at the workplace.

121. Defendants' actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

122. Defendants' actions did in fact cause the Plaintiff to suffer emotional distress.

123. As a result of Defendants' actions Plaintiff has suffered emotional distress.

## AS AND FOR THE TENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST DEFENDANTS BASHANT, SUSTAR, BRADFORD AND GAZZILLO)

124. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

125. As described above, Defendants Bashant, Sustar, Bradford and Gazzillo willfully intended to cause Plaintiff emotional distress.

126. Defendants Bashant, Sustar, Bradford and Gazzillo's conduct was extreme and outrageous.

127. Defendants Bashant, Sustar, Bradford and Gazzillo's in perpetrating the above-described conduct, inflicted emotional distress on Plaintiff and failed to provide Plaintiff a safe workplace.

128. Defendants Bashant, Sustar, Bradford and Gazzillo's actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

129. Defendants Bashant, Sustar, Bradford and Gazzillo's caused the Plaintiff to suffer emotional distress.

## DEMAND FOR A JURY TRIAL

130. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on allclaims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and inwillful violation of the aforementioned federal; and state laws;

B. Awarding Plaintiff compensatory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff statutory penalties as recoverable under the NYLL;

E. Awarding Plaintiff costs and disbursements incurred in connection with this action,including reasonable attorneys' fees, expert witness fees, and other costs;

F. Pre-judgment and post-judgment interest, as provided by law; and

G. Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: New York, New York
December 2, 2022

Respectfully submitted,

By: *Christopher J. Berlingieri*
CHRISTOPHER J. BERLINGIERI, ESQ. (519324)
BERLINGIERI LAW, PLLC
Attorney for Plaintiff
244 Fifth Avenue, Suite F276
New York, New York 10001
Tel.:   (347) 766-5105
Fax:   (914) 730-1044
Email: cjb@nyctlaw.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Ms. Katrina Clothier
23 Warren Street
Corinth, NY 12822

From: Buffalo Local Office
300 Pearl St, Suite 450
Buffalo, NY 14202

EEOC Charge No.
525-2022-00211

EEOC Representative
Jennifer Carlo,
Lead Systemic Investigator

Telephone No.
716-431-5012

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- More than 180 days have passed since the filing of this charge.
- The EEOC is terminating its processing of this charge.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Maureen C. Kielt** Digitally signed by Maureen C. Kielt
Date: 2022.09.07 13:35:07 -04'00'

Maureen C. Kielt, Director
Buffalo Local Office

Enclosures(s)

cc: WOMEN'S CARE IN OBGYN
c/o Karen Sosler
Rivkin Radler LLP
66 S PEARL ST FL 11
Albany, NY 12207

Christopher Berlingieri
BERLINGIERI LAW, PLLC
244 Fifth Avenue Suite F276
New York, NY 10001